HANG AND ASSOCIATES, PLLC
Qinyu Fan
136-20 38th Ave. Suite 10G
Flushing, NY 11355
Tel: (718) 353-8588
Fax: (718) 353-6288
*Attorneys for the Plaintiff and proposed FLSA Collective*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
-----------------------------------------------------------------X

Dao Feng Wang, *on behalf of himself*
*and others similarly situated,*                                        **Case No.**
                                             Plaintiff,
                    v.                                                    **COMPLAINT**

He Cheng Restaurant Corp. d/b/a Ayame Hibachi & Sushi,
Ping An Xi Le Inc., d/b/a Ayame Hibachi & Sushi, Jian Tu,
Sheng Le Chen, Bao May, and Qing Chi Cai,
                                             Defendants,
-----------------------------------------------------------------X


        Plaintiff Dao Feng Wang (hereinafter "Plaintiff" or "Plaintiff Wang") on behalf of himself

and all others similarly situated, by and through his attorneys Hang & Associates, PLLC, hereby

file this complaint against the Defendants He Cheng Restaurant Corp. d/b/a Ayame Hibachi &

Sushi, Ping An Xi Le Inc., d/b/a Ayame Hibachi & Sushi, Jian Tu, Sheng Le Chen, Bao May, and

Qing Chi Cai (collectively as "Defendants") and alleges as follows:

                                    **INTRODUCTION**

        6.      This action is brought by Plaintiff, on behalf of himself as well as other employees

similarly situated, against Defendants for alleged violations of the Federal Labor Standards Act,

("FLSA") 29 U.S.C. § 201 et seq. and of the New Jersey State Wage and Hour Law, NJSA§34:11-

56 etseq ("NJWHL"), arising from Defendants' various willful and unlawful employment policies,

patterns and/or practices.

7.     Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA and NJWHL by engaging in a pattern and practice of failing to pay its employees, including Plaintiff, overtime compensation for all hours worked over forty (40) each workweek.

8.     Plaintiff alleges pursuant to the FLSA, that he is entitled to recover from the Defendants: (1) unpaid overtime wages, (2) liquidated damages, (3) prejudgment and post-judgment interest; and/or (4) attorneys' fees and costs.

9.     Plaintiff further alleges pursuant to New Jersey State Wage and Hour Law ("NJWHL") that he is entitled to recover from the Defendants: (1) unpaid overtime compensation, (2) liquidated damages equal to the sum of unpaid overtime, (3) prejudgment interest. (4) post-judgment interest, and (5) attorney's fees and costs.

## JURISDICTION AND VENUE

10.     This Court has original federal question jurisdiction over this controversy under 29 U.S.C. §216(b), 28 U.S.C. § 1331, and has supplemental jurisdiction over the New Jersey State Law claims pursuant to 28 U.S.C. § 1367(a).

11.     Venue is proper in the District of New Jersey pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFF

12.     Plaintiff Wang currently resides in Queens, New York.

13.     From September 10, 2017 to October 26, 2019, Plaintiff was employed as delivery person by Defendants to work at their sushi restaurant located at 526 Washington Street, Hoboken,

NJ 07030.

14.     From September 10, 2017 to October 26, 2019, on every workday, Plaintiff was also employed as driver to pick up all the employees from Queens, New York, driving them to the restaurant, and then drop them off at home after work. Additionally, Plaintiff was required to do miscellaneous work every day besides his delivery and driving work.

## DEFENDANTS

15.     Defendant He Cheng Restaurant Corp. d/b/a Ayame Hibachi & Sushi (hereinafter, "He Cheng Restaurant") is a domestic corporation organized and existing under the laws of the State of New Jersey.

16.     Defendant Ping An Xi Le Inc., d/b/a Ayame Hibachi & Sushi (hereinafter "Ping An Restaurant") is a domestic corporation organized and existing under the laws of the State of New Jersey.

17.     Defendant Jian Tu (hereinafter, "Defendant Tu" or "Tu") is a resident of the State of New Jersey.

18.     Defendant Sheng Le Chen, (hereinafter, "Defendant Chen" or "Chen") is a resident of the State of New Jersey.

19.     Defendant Bao May, (hereinafter, "Defendant May" or "May") is a resident of the State of New Jersey.

20.     Defendant Qing Chi Cai (hereinafter, "Defendant Chen" or "Chen") is a resident of the State of New Jersey.

### *Individual Defendants*

3

21.     Upon information and belief, Defendant Tu, is the registered agent and president of He Cheng Restaurant. He participates in the day-to-day operations of He Cheng Restaurant. Thus, Defendant Tu is an employer pursuant to FLSA §203 (d) and the regulations thereunder, and is jointly and severally liable with He Cheng Restaurant d/b/a Ayame Restaurant.

22.     Upon information and belief, Defendant Chen, was known as "boss" and the owner of Ayame Hibachi and Sushi restaurant (hereinafter "Ayame Restaurant" or "the restaurant") to Plaintiff Wang. Defendant Chen is the registered agent of Ping An Restaurant, and also one of the three registered principles of Ping An Restaurant. He is the President of the restaurant. He participates in the day-to-day operations of Ayame Restaurant. Defendant Chen conducts the recruitment of the company, and makes all business decisions including, without limitation, the amount in salary the employee will receive, and the number of hours employees will work. And he scheduled and supervised Plaintiff's work, acting intentionally and maliciously. Thus, Defendant Chen was an employer pursuant to FLSA §203 (d) and the regulations thereunder, and is jointly and severally liable with Ping An Restaurant d/b/a Ayame Restaurant.

23.     Upon information and belief, Defendant May, was known as "lady boss" and the owner of Ayame Restaurant to Plaintiff. Being one of the three registered principles of Ping An Restaurant, she is the Vice President of the company. She participates in the day-to-day operations of Ayame Restaurant. Defendant May conducts the recruitment of the company, and makes all business decisions including, without limitation, the amount in salary the employee will receive, and the number of hours employees will work. And she scheduled and supervised Plaintiff's work, acting intentionally and maliciously. Thus, Defendant May was an employer pursuant to FLSA §203 (d) and the regulations thereunder, and is jointly and severally liable with Ping An Restaurant d/b/a as Ayame Restaurant.

24.     Upon information and belief, Defendant Cai, was known a partner with bosses, an officer or manager of Ping An Restaurant d/b/a Ayame Restaurant to Plaintiff. He was the Vice President and managers of the company. He participates in the day-to-day operations of Ayame Restaurant. Defendant Cai conducts the recruitment of the company, and makes all business decisions including, without limitation, the amount in salary the employee will receive, and the number of hours employees will work. Defendant Cai discusses the recruitment and termination of employees at Ayame Restaurant with its owners. And he scheduled and supervised Plaintiff's work, acting intentionally and maliciously. Thus, Defendant Cai was an employer pursuant to FLSA §203 (d) and the regulations thereunder, and is jointly and severally liable with Ping An Restaurant d/b/a as Ayame Restaurant.

### *Corporation Defendants*

25.     Upon information and belief, Defendant Ping An Restaurant d/b/a Ayame Restaurant, is a domestic corporation organized under the laws of the New Jersey State with a principle business address at 526 Washington St, Hoboken, NJ 07030.

26.     Upon information and belief, Defendant Ping An Restaurant d/b/a Ayame Restaurant is owned by Defendants Chen and May as the owners, and Defendant Cai as the manager. Thus, Ping An Restaurant d/b/a Ayame Restaurant is jointly and severally liable with Defendants Chen, May, and Cai, i.e., the owners and managers.

27.     Upon information and belief, Defendant He Cheng Restaurant d/b/a Ayame Restaurant, is a domestic corporation organized under the laws of the New Jersey State with a principle business address at 526 Washington St, Hoboken, NJ 07030.

28.     Upon information and belief, Defendants Ping An Restaurant and He Cheng

Restaurant both doing business as Ayame Restaurant at the same restaurant located at 526 Washington St, Hoboken, NJ 07030. Therefore, entities registered as He Cheng Restaurant and Ping An Restaurant run the same business at the same restaurant, and shared the joint employment of Plaintiff Wang during his employment with Ayame Restaurant.

29.     Upon information and belief, Ayame Restaurant has about twenty (20) employees.

30.     Upon information and belief, Defendant He Cheng Restaurant d/b/a Ayame Restaurant is owned by Defendants Jian Tu as the President. Thus, Defendant Tu, i.e., the owner and President is jointly and severally liable with He Cheng Restaurant d/b/a Ayame Restaurant.

31.     At all relevant times, Defendants knowingly and willfully failed to pay Plaintiff his lawfully earned overtime compensation for all hours worked over forty each week, in violation of the FLSA.

32.     At all relevant times, Defendants knowingly and willfully failed to pay Plaintiff the required minimum wages for all hours he worked.

33.     At all relevant times, Defendants knowingly and willfully further deducted Plaintiff's pay under minimum wages by failure to compensate Plaintiff the tool of trade expenses.

34.     On termination of Plaintiff, Defendants knowingly and willfully conducted illegal reduction of Plaintiff's wages.

35.     Plaintiff has fulfilled all conditions precedent to the institution of this action and/ or conditions have been waived.

## STATEMENT OF FACTS

36.     Defendants knew that the nonpayment of all overtime compensation, failure to provide compensation for tools of trade expenses bringing down Plaintiff's salary below the minimum wage requirement, and illegal wage deduction would financially injure Plaintiff and

violate state laws.

37.     Upon information and belief, Plaintiff worked for Defendants as delivery person, miscellaneous worker, and driver at their restaurant located at 526 Washington St, Hoboken, NJ 07030, from on September 10, 2017 to October 26, 2019.

38.     Plaintiff Wang was required to drive his car to pick up restaurant employees in Flushing, New York, driving them to the restaurant, and then do on some miscellaneous work for about an hour such as making sauces, prepare cardboards, etc. Then Plaintiff would start working as delivery person until the restaurant closes and there were no orders to deliver. After that, Plaintiff Wang would start driving restaurant employees back to Flushing, New York.

39.     Upon information and belief, Plaintiff Wang worked six (6) days a week from September 10, 2017 to the end of October 2018, taking Wednesday off. On Monday and Tuesday, Plaintiff start picking up restaurant employees at 12:45 pm, and finish picking up at around 1:00 pm and start driving employees to the restaurant. They would arrive at the restaurant at around 2:00 pm. Plaintiff Wang would work on miscellaneous work including preparing sauces and cardboard boxes for about an hour. Around 3:00 pm, Plaintiff Wang began working on deliveries until 11:00 pm. After that, Plaintiff would start driving employees back, dropping them off, on average, at around 12:30 am. On Thursday, Plaintiff Wang would start picking up employees at 9:45 am, driving them to the restaurant at around 10:15 am and arriving the restaurant at around 11:30 am, then Plaintiff Wang would start working on miscellaneous work for about an hour, then start working on delivering orders until 11:00 pm. Plaintiff Wang had to drive employees back and drop them off in Flushing, on average, at around 12:30 am. On Friday and Saturday, Plaintiff Wang would start picking up employees at 9:45 am, driving them to the restaurant at around 10:15 am and arriving the restaurant at around 11:30 am, then Plaintiff Wang would start working on

miscellaneous work for about an hour, then start working on delivering orders until 11:30 pm. Plaintiff Wang had to drive employees back and drop them off in Flushing on average at around 1:00 am. On Sunday, Plaintiff Wang would start picking up employees at 10:45 am, driving them to the restaurant at 11:00 am and arriving the restaurant at 12:00 pm. Then for about an hour, Plaintiff worked on some miscellaneous work and start working on delivery orders until 10:30 pm. Plaintiff Wang had to drive employees back and drop them off in Flushing on average at around 12:00 am. For on average one time per week, after the restaurant was closed, Plaintiff Wang still had to finish the last delivery order prior to driving employees back, which would take him about another 45 minutes to drop employees off in Flushing. Thus, from September 10, 2017 to on or around the end of October 2018, Plaintiff Wang worked Six (6) days a week, eighty-two (82) hours per week.

40.     Upon information and belief, from on or around the end of October 2018 to October 26, 2019, Plaintiff Wang was working on the same schedule as above, except for that, because of the change of restaurant's business hours on Thursday (the restaurant is open at 2:00 pm instead of 11:30 am om Thursday after the end of October 2018), Plaintiff's Thursday schedule was changed. On Thursday, Plaintiff Wang would start picking up employees at 12:45 pm, finishing picking up at around 1:00 pm and start driving employees to the restaurant. They would arrive at the restaurant at around 2:00 pm. Plaintiff Wang would work on some miscellaneous work for about an hour, then start working on delivery orders until 11:00 pm. Plaintiff Wang had to drive employees back and drop them off in Flushing at around 12:30 am. Therefore, from on or around the end of October 2018 to October 26, 2019, Plaintiff Wang worked six (6) days, seventy-nine and a half (79.5) hours per week.

41.     Plaintiff Wang usually took Wednesday off. However, sometimes Plaintiff Wang

would switch his off-work day with other employees in the restaurant if necessary. When Plaintiff Wang asked for one-day off from the owners and managers, they would not allow him to take one, but only to switch his off-day with other employees.

42.     Upon information and belief, from on or around August 2018 to December 2018, Plaintiff Wang was asked to help with the interior renovation in the restaurant using the gap between two delivery orders or any work.

43.     Upon information and belief, for all relevant time, Plaintiff was paid biweekly, in combination of cash and check, at the fixed rate of $65 per day. The amount on check usually varies from month to month, since it was made for tax return report purpose. The rest amount will be paid in cash. In some occasions, Plaintiff would receive two checks in a total amount exceeding the amount he should be paid, and he would give the amount in difference back to Defendants in cash upon receiving the checks.

44.     Upon information and belief, Plaintiff Wang was never compensated for any of his tools-of-trade expenses, except for his daily salary rate of $65 including $5 for the compensation of the E-Z Pass tolls. However, even with car-pool discount, Plaintiff Wang needed to pay at least $6.5 for each E-Z Pass trip.

45.     Therefore, Plaintiff's salary is $60 per day, and is still owed $1.5 for each toll every day.

46.     Except for E-Z Pass tolls, Plaintiff had to use his personal vehicle for deliveries, and was never compensated.

47.     Plaintiff would regularly spend about $400 per month for gas, about $400 annually for changing tires, and $60 every two months for oil change. Plaintiff would also pay about $400 annually for parking when he was working for Defendants on deliveries and other work,

particularly the interior renovation work he helped with Defendants.

48.    Plaintiff paid $2,800 for repairing his car after his car broke down on delivery assignments in February. He had to pay $500 for renting a car for work for about a week when the car was under repair.

49.    Plaintiff usually takes a quick lunch at work.

50.    Plaintiff was treated unfairly when he was assigned for delivery orders. There were three delivery persons, and Defendants have an order wait list for delivery orders. When it was Plaintiff's turn for "good orders", those "good orders" were assigned to another delivery person whom Defendants like, and Plaintiff was assigned to other orders far and with less tips.

51.    On October 26, 2019, another time when Defendants intentionally assigned Plaintiff to other orders far and with less tips when it was his turn for a "good order", Plaintiff had an argument with Defendants Cai and May. Plaintiff complained to Defendants Cai and May that it is unfair to assign him to deliveries with less tips when it was his turn to take the "good order" with better tips. Defendants Cai told him that, "this is how I assign orders, what can you do about it?" Then Defendant May joined the conversation, saying "I told him to do so. This is my restaurant, and I assign orders to whomever I like. You can leave if you do not like it." At some point during the argument, it got heated. Defendant Cai started pointing at Plaintiff's nose while he was talking and suddenly approached quickly towards Plaintiff. Plaintiff felt threatened, and thought Defendant Cai was going to hit him. At that moment, Plaintiff raised his elbow up to his face to protect himself from the hit he anticipated. As a result, Plaintiff's elbow slightly grazed Defendant Cai's brow. Defendants fired Plaintiff Wang, and refuse to pay Plaintiff salaries for his work from October 15 to October 26, in total $715. Defendant Cai kept asking Plaintiff for money on WeChat for the slight graze, after Plaintiff was terminated with a deduction of $715 in his salaries.

52.     Throughout Plaintiff's employment, Defendants did not pay Plaintiff his overtime compensation for any hours that he worked beyond forty (40) hours per week.

53.     Throughout Plaintiff's employment, Defendants never provided Plaintiff with any wage statement when Plaintiff was paid. There was only a simple record keeping track of the amount of money Plaintiff received for his salary during a certain period, which is under Defendants' control.

54.     Plaintiff's tips were calculated and paid every day in cash. There was no agreement regarding tip credits. And because Plaintiff did side work including driving, miscellaneous work, or even helped with the interior renovation of Defendants' restaurant.

55.     Plaintiff was not exempt from the overtime or minimum wage provisions of the FLSA and state laws during his employment with Defendants.

56.     Defendants managed Plaintiff's employment, including the amount of overtime worked. Defendants also dictated, controlled, the wage and hour and all related employee compensation policies.

57.     After Plaintiff had communicated with Defendants for his unsatisfaction about the unfairly scheduled assignments, Defendants acted violently, forcing Plaintiff to get terminated and further deducted Plaintiff's wages, in violation of the FLSA.

58.     Defendants committed the above acts knowingly, intentionally and willfully.

59.     Defendants committed the foregoing acts against the Plaintiff, and all other employees of the Defendants similarly situated.

60.     At all relevant times, Defendants knowingly and willfully failed to pay Plaintiff the minimum wage, and his lawfully overtime compensation at the rate of one and one half times (1.5x) his regular rate of pay for all hours worked over forty (40) in a given workweek.

61.     Throughout his employment with Defendants, Plaintiff was not required to punch time cards or otherwise record his work hours.

62.     Upon information and knowledge, Defendant Hong failed to keep full and accurate records of Plaintiff's hours and wages.

## STATEMENT OF CLAIMS
### COUNT I.
### [Violations of the Fair Labor Standards Act—
### Overtime Wage Brought on behalf of the Plaintiff]

63.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

64.     The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he or she is employed, or one and one-half times the minimum wage, whichever is greater. 29 USC §207(a).

65.     Although the FLSA and supporting regulations provides that, commissions (whether based on a percentage of total sales or of sales in excess of a specified amount, or on some other formula) are payments for hours worked and must be included in the regular rate. This is true regardless of whether the commission is the sole source of the employee's compensation or is paid in addition to a guaranteed salary or hourly rate, or on some other basis, and regardless of the method, frequency, or regularity of computing, allocating and paying the commission." 29 C.F.R. § 778.117. The employee must then be paid extra compensation at one-half of that rate for each hour worked in excess of the applicable maximum hours standard. 29 C.F.R. § 778.118.

66.     The FLSA provides that any employer who violates the provisions of 29 U.S.C.

12

§207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC §216(b).

67.     At all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiff and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§201, et seq., including 29 U.S.C. §§207(a)(1) and 215(a).

68.     The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. §516.4.

69.     Defendants willfully failed to notify Plaintiff and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiffs and FLSA Collectives' labor.

70.     Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiff the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such was due and that failing to do so would financially injure Plaintiff.

## COUNT II.
### [Violation of New Jersey Wage and Hour Law— Overtime Pay Brought on behalf of Plaintiff]

71.     Plaintiffs re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

72.     At all relevant times, Defendants had a policy and practice of refusing to pay the overtime compensation to Plaintiff at one and one half times the hourly rate the Plaintiff and the class are entitled to, in violation of NJWHL §§34:11-56a et seq.

73.     Defendants' failure to pay Plaintiff was not in good faith.

74.     Due to Defendants' failing to pay Plaintiff, Plaintiff is entitled to recover from Defendants their full unpaid overtime pay, liquidated damages, reasonable attorneys' fees and costs and disbursement of the action pursuant to NJWHL §§34:11-56a et seq.

**COUNT III.**
**[Violations of the Fair Labor Standards Act—**
**Minimum Wage Brought on behalf of the Plaintiff]**

75.     The FLSA requires employers of covered employees who are not otherwise exempt to pay these employees a minimum wage of not less than $7.25 per hour effective July 24, 2009.

76.     The FLSA provides that any employer who violates the provisions of 29 U.S.C. §207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC §216(b).

77.     Here, Plaintiff worked around eighty (80) hours per week, and received $360 (=$60*6) per week. Therefore, Plaintiff's actual hourly wage was around $4.5, which is lower than $7.25 per hour.

78.     The hourly wage for tipped employees will not apply in this case, because Plaintiff was required to do side work including making the sauce, driving employees, helping with interior renovations, etc. Therefore, Plaintiff will not be treated solely as a tipped delivery person.

79.     Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiff the statutory required minimum wages for all hours he worked, when they knew or should have known such was due and that failing to do so would financially injure Plaintiff.

**COUNT IV.**

14

**[Violation of New Jersey Wage and Hour Law —
Minimum Wage Brought on behalf of the Plaintiff]**

80.     N.J.A.C. 12:56-3.1 provides the New Jersey State minimum wage rate, and the rate is adjusted every year. Pursuant to N.J.A.C. 12:56-3.1, on or after January 1, 2018 the minimum wage rate was $8.60 per hour."; and on or after January 1, 2019, and before July 1, 2019, the rate became $8.85 per hour.

81.     Here, Plaintiff worked around eighty (80) hours per week, and received $360 (=$60*6) per week. Therefore, Plaintiff's actual hourly wage was around $4.5, which is lower than $8.60 in 2018 and $8.85 per hour in 2019.

82.     Therefore, Defendants knowingly and willfully failed to compensate Plaintiff the statutory required minimum wages for all hours he worked in violation of NJWHL, when they knew or should have known such was due and that failing to do so would financially injure Plaintiff.

**COUNT V.
[Violations of the Fair Labor Standards Act—-
Tools of Trade Brought on behalf of the Plaintiff]**

83.     29 CFR § 531.35 provides that, wages need to be paid finally and unconditionally or "free and clear."

84.     Here, Plaintiff not only was compensated below his statutory minimum hourly wage, but also was forced to suffer from the unlawful deduction of expenses on his tools of trade.

85.     Plaintiff was required to use his own vehicles and pay the gas, maintenance of the vehicle, used as tools of trade for his job, out of his own pocket. Additionally, as for the toll fees that Plaintiff had to pay every day to E-Z Pass in order to drive employees to and from the restaurant, the cost Plaintiff pay every day was $6.5 while he was only reimbursed for $5 every day for no legitimate reasons.

86.     Therefore, Defendants' failure to deliver Plaintiff's lawfully earned wages "free and clear" violates the FLSA.

87.     Defendants knowingly and willfully failed to compensate Plaintiff his tools of trade expenses for his employment with Defendants, and thus failed to deliver Plaintiff's lawfully earned wages "free and clear". Therefore, Plaintiff is entitled to the recover from Defendants tools of trade expenses for his employment with Defendants, liquidated damages, reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself, and the FLSA Collective Plaintiffs, respectfully requests that this Court enter a judgment providing the following relief:

a)     A declaratory judgment that the practices complained of herein are unlawful under FLSA and NJWHL;

b)     An injunction against Corporate Defendants, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

c)     An award of overtime wages due under FLSA and NJWHL;

d)     An award of minimum wages due under FLSA and NJWHL;

g)     An award of liquidated damages as a result of Defendants' knowing and willful failure to pay overtime compensation and minimum wages pursuant to 29 U.S.C. §216;

h)     An award of liquidated damages as a result of Defendants' willful failure to pay overtime compensation and minimum wages pursuant to the NJWHL;

i)     An award of reimbursement for Plaintiff's tools of trade expenses under FLSA;

16

j)      An award of costs and expenses of this action together with reasonable attorneys' and
        expert fees pursuant to 29 U.S.C. §216(b) and NJWHL;

k)      The cost and disbursements of this action;

l)      An award of prejudgment and post-judgment fees; and

m)      Such other and further legal and equitable relief as this Court deems necessary, just,
        and proper.

Dated: Flushing, New York

November 15, 2019

                                        Respectfully Submitted,

                                        HANG & ASSOCIATES, PLLC
                                        *Attorneys for Plaintiff*

                                         /s/   Qinyu Fan____
                                        Qinyu Fan, Esq.

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by Ayame Hibachi & Sushi and/or related entities and individuals. I consent to be a plaintiff in an action to collect unpaid overtime and minimum wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

Wang DAOFENg
_____
Full Legal Name (Print)

_____
Signature

10/28/2019
_____
Date

18